# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

TIMOTHY DICKENS,

    Plaintiff

v.

GNLV CORP.,

    Defendant

Case No.: 2:21-cv-00087-APG-VCF

**Order**

[ECF No. 42]

Plaintiff Timothy Dickens sues his former employer, GNLV Corp., for age discrimination in violation of the Age Discrimination in Employment Act (ADEA). ECF No. 34.  Dickens contends that he was laid off as a table games dealer at the Golden Nugget hotel and casino during the Covid-19 pandemic and was not rehired despite his 20 years of experience because GNLV replaced former employees like him with younger workers.  GNLV moves for summary judgment, arguing that Dickens cannot show a prima facie case of age discrimination and, even if he could, he cannot show that GNLV's legitimate, non-discriminatory reasons for terminating his employment were pretextual.  Dickens responds that the evidence shows that GNLV used an outside staffing company to replace laid off dealers with young attractive females.

The parties are familiar with the facts, so I repeat them here only as necessary to resolve the motion.  I grant GNLV's motion because no reasonable jury could find that Dickens was replaced by a younger worker or that GNLV's reasons for its rehiring decisions were pretext for age discrimination.

## I.  ANALYSIS

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

1  56(a).  A fact is material if it "might affect the outcome of the suit under the governing law."

2  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if "the evidence

3  is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

4          The party seeking summary judgment bears the initial burden of informing the court of

5  the basis for its motion and identifying those portions of the record that demonstrate the absence

6  of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The

7  burden then shifts to the non-moving party to set forth specific facts demonstrating there is a

8  genuine issue of material fact for trial. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th

9  Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a

10  genuine dispute of material fact that could satisfy its burden at trial.").  I view the evidence and

11  reasonable inferences in the light most favorable to the non-moving party. *Zetwick v. Cnty. of*

12  *Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017).

13          The ADEA makes it unlawful for an employer to discriminate against a person who is at

14  least 40 years of age "because of such individual's age." 29 U.S.C. §§ 623(a)(1), 631(a).  At

15  summary judgment, a plaintiff may show age discrimination in employment either through direct

16  evidence of discriminatory intent, or by resort to the *McDonnell Douglas*[1] burden-shifting

17  analysis. *France v. Johnson*, 795 F.3d 1170, 1173 (9th Cir. 2015), *as amended on reh'g* (Oct. 14,

18  2015); *Shelley v. Geren*, 666 F.3d 599, 607-08 (9th Cir. 2012).

19      **A.  Direct Evidence**

20      Direct evidence of discrimination is "evidence of conduct or statements by persons

21  involved in the decision-making process that may be viewed as directly reflecting the alleged

22  discriminatory attitude sufficient to permit the fact finder to infer that that attitude was more

23

---

[1] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

1 likely than not a motivating factor in the employer's decision." *France*, 795 F.3d at 1173

2 (simplified).  To raise a genuine dispute for trial, such evidence must be "directly tied to the

3 adverse employment decision." *Id.*  "[S]tray remarks not directly tied to the decisionmaking

4 process are not direct evidence capable of defeating summary judgment." *Id.*

5        The only direct evidence of discriminatory intent is a stray comment by Dickens' former

6 supervisor approximately five years before GNLV's decision not to rehire him. *See* ECF No. 53-

7 1 at 131-34.  This single remark unrelated to the adverse employment decision is insufficient to

8 raise a genuine dispute for trial.

9        **B.  *McDonnell Douglas***

10        Under the *McDonnell Douglas* burden-shifting analysis, Dickens "must first establish a

11 prima facie case of age discrimination." *Shelley*, 666 F.3d at 608.  To establish a prima facie

12 case, Dickens must show that he was (1) at least age 40; (2) performing his job satisfactorily;

13 (3) not rehired; and (4) either "replaced by [a] substantially younger employee[] with equal or

14 inferior qualifications" or there is evidence that he was not rehired "under circumstances giving

15 rise to an inference of age discrimination." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281

16 (9th Cir. 2000) (quotation omitted).  The "degree of proof necessary to establish a prima facie

17 case . . . on summary judgment is minimal and does not even need to rise to the level of a

18 preponderance of the evidence." *Opara v. Yellen*, 57 F.4th 709, 722 (9th Cir. 2023) (quotation

19 omitted).

20        If Dickens establishes a prima facie case, then the burden shifts to GNLV "to articulate a

21 legitimate non-discriminatory reason for its adverse employment action." *Shelley*, 666 F.3d at

22 608.  "This burden is one of production, not persuasion and involves no credibility assessment."

23 *Opara*, 57 F.4th at 723 (simplified).

1      If GNLV meets this burden, then Dickens must show "there is a material genuine issue of

2 fact as to whether the employer's purported reason is pretext for age discrimination." *Shelley*,

3 666 F.3d at 608.  Dickens can demonstrate pretext "directly, by showing that unlawful

4 discrimination more likely than not motivated the employer," "indirectly, by showing that the

5 employer's proffered explanation is unworthy of credence because it is internally inconsistent or

6 otherwise not believable," or through a combination of these methods. *France*, 795 F.3d at 1175;

7 *Opara*, 57 F.4th at 723.

8      Assuming Dickens has established a prima facie case, GNLV has articulated a legitimate,

9 non-discriminatory reason for its decision to not rehire Dickens.  GNLV explains that when

10 casinos were shut down and then partially reopened during the Covid-19 pandemic, GNLV was

11 faced with the unprecedented situation of having to predict business needs upon reopening,

12 including how many employees it would need. ECF No. 42-1 at 3-4.  Golden Nugget's vice

13 president of casino operations, Jason Sides, developed six criteria to evaluate which employees

14 to rehire. *Id.* at 4-5.  These factors were "seniority, attendance, discipline, table game knowledge,

15 customer service, and employee performance." *Id.*  Seniority was a positive factor in the decision

16 to rehire, with any employee having over ten years of service receiving full points in this

17 category. ECF No. 42-3 at 9.  However, no additional points were added for years of service

18 beyond ten. *Id.* at 12.

19      Using these criteria, Golden Nugget rehired dealers who were over and under age 40.

20 ECF No. 42-1 at 6.  Approximately 75% of the rehired table games dealers were over age 40,

21

22

23

1  which is comparable to the percentage prior to the March 2020 pandemic shutdown. *Id.*

2  Dickens' overall score on the criteria placed him in the bottom 27% of full-time dealers.[2] *Id.*

3       In addition to the full-time rehires, GNLV used a staffing company, Casino Job Center

4  (CJC), for temporary dealers. *Id.* at 13.  GNLV used this same company before and after the

5  pandemic. *Id.*; ECF No. 53-1 at 141.  After reopening, "Golden Nugget staffed its core games,

6  such as craps, with Golden Nugget employees," while CJC employees staffed "additional games

7  on the weekends only and if business levels warranted it." ECF No. 42-1 at 6.  When Golden

8  Nugget requests workers from CJC, it "does not request particular individuals, other than to

9  ensure those individuals are qualified to deal the particular game(s) required." *Id.* at 7.  Nor does

10 it request CJC employees from a particular age group. ECF No. 42-3 at 19.  GNLV generally

11 does not hire CJC employees as permanent Golden Nugget employees, although that has

12 happened in isolated circumstances.[3] ECF No. 53-1 at 40.  Instead, GNLV places orders for

13 temporary dealers on a weekly basis. *Id.* at 43.  GNLV had "weeks where [it was] using CJC and

14 other weeks where [it] cut them out completely." *Id.* at 63.

15      Because GNLV has offered a legitimate, non-discriminatory reason for its decision not to

16 rehire Dickens, the burden shifts to Dickens to present evidence raising a genuine dispute that the

17 given reason was pretext for age discrimination.  He has not done so.  Dickens has presented no

18 evidence that GNLV's rehiring criteria were discriminatory generally or particularly with respect

19 to him.  To the contrary, 75% of the dealers GNLV rehired were over 40, and that amount was

20

21

___

22 [2] Dickens presents no evidence that he was erroneously scored on any of the criteria.  He admits
   he had attendance issues throughout his career. ECF No. 53-1 at 172-73, 188.

23 [3] There is no evidence that Dickens' full-time position was replaced with a former CJC
   employee, much less one that was substantially younger than Dickens.

consistent with pre-pandemic percentages.[4]  And he presents no evidence that GNLV hired a full-time employee who was substantially younger than him to replace him.

Instead, Dickens relies on GNLV's use of temporary CJC employees as evidence of age discrimination.  He contends that CJC employees tended to be young females.  But he presents no evidence of any CJC employee's age.  Instead, he relies on screenshots of CJC's website and anecdotal reports from other dealers in text messages and Facebook posts.[5]

The website screenshots show women dealers and most, if not all, appear to be under the age of 40. *See* ECF No. 53-1 at 88-94.  But Dickens presents no evidence that this was CJC's website as it appeared in 2020 when Dickens was not rehired, that any of the pictured women were actual CJC employees, that any of them ever worked at Golden Nugget, or any of their ages.  The website therefore does not raise a genuine dispute that GNLV's reason for not rehiring Dickens and instead using CJC employees was pretext for age discrimination.

The text messages and Facebook posts also do not raise an issue of fact that Dickens was replaced by a younger employee or that GNLV's legitimate, non-discriminatory reason was pretextual.  In a text message, a Golden Nugget employee states that all the dealers being auditioned were "young girls from cjc." ECF No. 53-1 at 207.  Auditioning means the person being reviewed deals a live table game and a manager rates the applicant. ECF No. 53-1 at 39.

---

[4] Dickens appears to argue that GNLV targeted older employees because, among other reasons, they earn more vacation leave.  GNLV's policies provide that after 12 years of service, an employee earns four weeks of vacation. ECF No. 42-1 at 22.  Dickens testified that another former Golden Nugget employee stated to him that Golden Nugget was "getting rid of people they don't want anymore, old people with lots of vacation." ECF No. 53-1 at 158.  But a person could have 12 years of service and still be under 40 years old. *Id.* at 160.  Given GNLV's preference for ten years or more of service in its rehiring criteria and 75% of the rehired employees were over 40, this unsupported argument does not raise a genuine dispute for trial.

[5] GNLV objects to consideration of the website, text messages, and Facebook posts because they are unauthenticated hearsay.  I need not resolve these objections because even considering the evidence, Dickens fails to raise a genuine dispute for trial.

1 GNLV conducted auditions for CJC employees on a continual basis because CJC has a high

2 turnover rate and is constantly replenishing its roster of employees that companies like GNLV

3 can hire on a temporary basis. *Id.* There is no evidence that any of the "young girls" auditioned

4 at that time ever actually worked at the Golden Nugget or what their ages were. In an undated

5 text message, another dealer indicated that he replaced "young girls" at shift change. *Id.* at 231-

6 32. There is no evidence who these persons were, what their ages were, or whether they worked

7 there more than this single shift. In a Facebook post, another Golden Nugget employee stated

8 that when she came to work, the crew she replaced "was all party pit dealers."[6] *Id.* at 216. The

9 Facebook post does not identify who the dealers were, who they worked for (CJC or Golden

10 Nugget), their ages, or that they worked more than this single shift. A few isolated instances of

11 "young" women being auditioned and working sporadic shifts, without any evidence of their

12 actual ages, employment, and work schedules, does not raise a genuine dispute that GNLV's

13 decision to use CJC employees on a temporary basis for unpredictable business needs was

14 pretext for age discrimination.

15     In sum, even viewing the evidence in the light most favorable to Dickens, no reasonable

16 jury could find GNLV decided to not rehire Dickens because of his age. GNLV used a multi-

17 factor rehiring plan that gave a preference for ten or more years of service, and which resulted in

18 GNLV rehiring a comparable percentage of dealers over 40 as it had employed prior to the

19 pandemic shutdown. There is no evidence as to the identities, age, employer, or work schedules

20

21

22

23

[6] The employee presumably was referring to CJC employees, although there is no testimony from that employee as to what she meant. *See* ECF No. 53-1 at 34-35 (Sides explaining that GNLV used to have a "party pit" that played loud music and was staffed by CJC, and although GNLV no longer has a "party pit," the name may persist to describe CJC employees).

7

1  of the CJC employees beyond isolated anecdotes of undefined "young" workers.  That does not

2  raise a genuine dispute for trial on pretext.

3  **II.  CONCLUSION**

4        I THEREFORE ORDER that defendant GNLV Corp.'s motion for summary judgment

5  **(ECF No. 42) is GRANTED**.  The clerk of court is instructed to enter judgment in favor of

6  defendant GNLV Corp. and against plaintiff Timothy Dickens, and to close this case.

7        DATED this 5th day of December, 2023.

8

9                               ANDREW P. GORDON

10                              UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23